1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | Case No. 1:24-cv-01001-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| REVOLUTIONARY PRODUCTIONS INC., | ORDER DIRECTING THE CLERK OF THE COURT TO RANDOMLY ASSIGN THIS MATTER TO A DISTRICT JUDGE |
| Defendant. | |
| | ORDER REQUIRING SERVICE ON DEFENDANT WITHIN THREE DAYS |
| | (ECF No. 15) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Great American Insurance Company ("Plaintiff") asserts that under an insurance policy issued to Revolutionary Productions Inc., a California corporation also known as Sum of Us Festival ("Defendant"), Plaintiff has no duty to defend or indemnify Defendant with respect to an insurance claim tendered by Defendant arising out of an incident at the 2023 Sum of Us Festival. Because Defendant has not responded to the complaint, Plaintiff now seeks default judgment. No opposition to Plaintiff's motion was filed. The Court held hearings on the motion on March 5, 2025 and March 12, 2025, at which no appearance was made on behalf of Defendant.

Following amendment of the Local Rules effective March 1, 2022, a certain percentage of civil cases shall be directly assigned to a Magistrate Judge only, with consent or declination of

1

consent forms due within 90 days from the date of filing of the action.  L.R. App. A(m)(1).  This action has been directly assigned to a Magistrate Judge only.  Not all parties have appeared in this action.  Pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c)(7), and Local Rule Appendix A, subsection (m), the Court shall direct the Clerk of the Court to assign a District Judge to this action and the Court shall issue these findings and recommendations as to the pending motion for default judgment.

Having considered Plaintiff's motion and supplemental briefing, the declaration and exhibits attached thereto, Defendant's nonappearance at both hearings, as well as the Court's file, the Court recommends granting Plaintiff's motion for default judgment in part and denying the motion in part.

## II.

## BACKGROUND

### A.    The Underlying Prelitigation Claim

Plaintiff filed this action for declaratory judgment under 28 U.S.C. § 2201(a) to be relieved of any duty to defend or indemnify Defendant under an insurance policy for a prelitigation settlement demand by third party Natalie Noghrey against Defendant for injuries she sustained while attending the Sum of Us Festival ("the Festival"). (ECF No. 1 ("Compl.").)

According to Plaintiff's complaint, Noghrey was drinking alcohol on the evening of September 15, 2023 while attending the Festival.  (Compl. ¶ 20.)  The Festival furnished some of the alcohol Noghrey consumed.  (Id. at ¶ 25.)  Plaintiff provides three receipts for alcohol purchases allegedly made by Noghrey between 8:22 p.m. and 11:46 p.m., each identifying Defendant as the retailer.  (Id. at ¶ 26; ECF No. 1-4 at 2-5.)  Plaintiff alleges the liquor license for the event was nontransferable and issued to the Social Influence Foundation.  (Compl. ¶ 25.)  The bartenders on the night of the incident entered into separate written Volunteer Agreements for the Festival with Defendant whereby they agreed to provide services in exchange for free or discounted entry into the Festival.  (Id. at ¶¶ 25, 26; ECF No. 1-3 at 1-13.) [1]  Plaintiff alleges that

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    Defendant paid the bartenders their bartending tips from the Festival.  (Compl. ¶ 26.)

2        As the evening progressed, Festival organizers and staff determined that Noghrey was

3    excessively intoxicated and that she needed to be taken back to her campsite. (Compl. ¶ 22.)

4    When Festival organizer, Nadia Eker, and employee, Iris Triska, attempted to walk Noghrey in

5    the direction of her campsite, Eker and Triska identified a golf cart being driven by employee,

6    Jess Weiner.  (Id.)  Weiner was transporting another attendee to the medical area.  (Id.)  Eker and

7    Triska asked Weiner if they could ride on the golf cart to either reach the command center, the

8    medical area, or get as close as possible to Noghrey's cabin.  (Id.)  Noghrey claims that Weiner

9    was operating the golf cart while intoxicated.  (Id. at ¶ 23; ECF No. 21-2 at 3.)

10        Between approximately 1:20 a.m. and 2:00 a.m. on September 16, 2023, Weiner made a

11    right turn and Noghrey allegedly fell out of the golf cart and hit her head on the pavement,

12    rendering her unconscious.  (Compl. ¶ 23.)  Noghrey's claim alleges that she was rushed to the

13    hospital where she stayed under 24-hour care for nearly a month before she was discharged.  (Id.)

14    Noghrey claims she has sustained permanent injuries as a result of the incident.  (Id.)

15        Noghrey claims that Defendant owed Noghrey a heightened duty standard of care because

16    of her intoxicated state.  (Compl. ¶ 24.)  Noghrey further claims Defendant breached its

17    heightened duty because Defendant's employees failed to ensure Noghrey's safety after they

18    placed her in the golf cart.  (Id.)

19        **B.        Terms of the Policy**

20        Plaintiff issued policy number 472-50-34-01 to named insured Sports and Recreation

21    Providers Association for the policy period February 2, 2023 to February 2, 2025 (the "Master

22    Policy").  (ECF No. 1 ("Compl.") at ¶ 6; ECF No. 1-1 at 6.)  Under Certificate of Coverage No.

23    GAS114226 Form 36270 (Ed. 05/18) in connection with the Master Policy (the "Certificate"),

24    Defendant Revolutionary Productions, Inc.: Sum of Us Festival "qualifies as an insured under the

25    Master Policy for the period of September 11, 2023, to September 19, 2023[.]"[2]  (ECF No. 1 at ¶

26    10; ECF No. 1-2 at 2-7.)  The Certificate provides insurance subject to all its terms, conditions,

27    _____

28    [2] Both the Master Policy and the Certificate are attached to the complaint and form the basis of Plaintiff's claims.
(ECF Nos. 1-1; 1-2). The Court finds both are incorporated by reference and may be considered. See Coto Settlement
v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); see also Fed. R. Civ. P. 10(c).

and limitations and incorporates the Master Policy by reference. (ECF No. 1-2 at 2.) The Certificate provides that "[c]overage only applies to 'Certificate Holders' [i.e., Revolutionary Productions, Inc.: Sum of Us Festival] for whom coverage has been placed in this program and by whom the premiums have been paid.  Coverage does not apply to the 'Policyholder' [i.e., Sports and Recreation Providers Association]." (Id.) Coverage by the insurance policy was limited to injury or damage caused by and occurring at the Sum of Us Festival.  (Id. at 7.)

The Certificate affords (1) commercial general liability coverage with limits of insurance of $1,000,000 each "occurrence"[3] and in the aggregate, and (2) professional liability coverage with limits of insurance of $1,000,000 each act, error, or omission and in the aggregate. (ECF No. 1-2 at 2-3.)  Notably, the Certificate indicates "liquor liability" and "hired and non-owned autos" are "Not Covered."  (Id.)

    1.   Commercial General Liability Coverage

The Master Policy provides commercial general liability coverage pursuant to Form CG 00 01 (Ed. 04/13). (ECF No. 1-1 at 46.) The Master Policy provides, in pertinent part, the following coverage by Plaintiff for bodily injury and property damage liability:

> **a.**  We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury"[4] or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit"[5] seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…
>
> **b.**  This insurance applies to "bodily injury" and "property damage" only if:

---

[3] The Master Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (ECF No. 1-1 at 63.)

[4] The Master Policy defines "bodily injury" as "physical injury, sickness, or disease, including death of a person. 'Bodily injury' also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person."  (ECF No. 1-1 at 111.)

[5] The Master Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged…."  (ECF No. 1-1 at 64-65.)

4

> **(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** the "bodily injury" or "property damage" occurs during the policy period…

(ECF No. 1-1 at 46.)

The Master Policy's commercial general liability coverage is subject to an "Amendment of Liquor Liability Exclusion" endorsement, Form CG 21 50 (Ed. 04 13), which provides, in pertinent part, that the insurance does not apply to:

> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> **(1)** causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;
>
> **(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> **(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:
>
> **(a)** the supervision, hiring, employment, training or monitoring of others by that Insured; or
>
> **(b)** providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;
>
> if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in paragraph **(1), (2)** or **(3)** above.
>
> This exclusion applies only if you:
>
> **(1)** manufacture, sell or distribute alcoholic beverages;
>
> **(2)** serve or furnish alcoholic beverages for a charge whether or not such activity:
>
> > **(a)** requires a license;

5

> **(b)** is for the purpose of financial gain or livelihood;

> **(3)** serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

> **(4)** permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

(ECF No. 1-1 at 103.)

The Master Policy's commercial general liability coverage is also subject to an "aircraft, auto or watercraft exclusion," which provides, in part, that the insurance does not apply to:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto"[6] or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

> This [aircraft, auto, or watercraft] exclusion does not apply to:

> **(5)**     "bodily injury" or "property damage" arising out of:

> > **(a)** the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

> > **(b)** the operation of any of the machinery or equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment."

(ECF No. 1-1 at 49-50.)

> 2.    <u>Professional Liability Coverage</u>

The Master Policy also provides professional liability coverage, which provides in

---

[6] The Master Policy defines "auto" as either (a) "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or [(b)] any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. However, 'auto' does not include 'mobile equipment.' " (ECF No. 1-1 at 61; <u>see also</u> ECF No. 1-1 at 63 (providing definition of "mobile equipment").)

pertinent part:

> [Plaintiff] will pay those sums the Insured becomes legally obligated to pay as 'damages' because of any act, error, or omission committed by:
>
>> (1) an insured in the rendering of or failure to render 'Professional Services'; or
>>
>> (2) another person or organization for whom the Named Insured is vicariously liable, in the course of that person's or organization's rendering of or failure to render 'Professional Services' for or on behalf of the Named Insured; as part of the Named Insured's operations as a social service, human service, religious, educational, or cultural organization.
>
> [Plaintiff] will have the right and duty to defend the Insured against any 'suit' seeking those 'damages.' However, [Plaintiff] will have no duty to defend the Insured against any 'suit' seeking 'damages' for any act, error, or omission to which this insurance does not apply….

(ECF No. 1-1 at 83.)

The Master Policy's professional liability coverage also provides, in pertinent part, that the insurance does not apply to any:

> **e.** "Damages" because of any liability by reason of:
>
>> (1) causing or contributing to the intoxication of any person;
>>
>> (2) furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>>
>> (3) any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages….
>
> **p.** "Damages" because of any liability arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, "auto," or watercraft, whether or not owned or operated by, or rented or loaned to, any insured. Use includes operation and loading or unloading.
>
> This exclusion applies even if the claim or "suit" against any insured alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that Insured, if the liability arises from the ownership, maintenance, use, or entrustment to others of any aircraft, "auto," or watercraft, whether or not owned or operated by, or rented or loaned to, any insured.

(ECF No. 1-1 at 84, 86.)

7

### C.    Plaintiff's Allegations

Plaintiff alleges there is no coverage for the Noghrey claim under (1) the commercial general liability coverage part of the Master Policy because both the liquor liability exclusion and auto exclusion bars coverage (Compl. ¶ 27); (2) the professional liability coverage part of the Master Policy because the alleged damages are not because of an act, error, or omission committed in the rendering of or failure to render "professional services" (id. at ¶ 28); or (3) the professional liability coverage part of the Master Policy because both the liquor liability exclusion and auto exclusion preclude coverage (id. at ¶ 29). Defendant allegedly disagrees with Plaintiff's contention that there is no coverage for the Noghrey claim and contends Plaintiff is obligated under the terms of the Master Policy to indemnify and defend it in connection to the Noghrey claim. (Id. at ¶¶ 34, 41.) Accordingly, Plaintiff seeks a judicial determination that the Master Policy does not provide coverage for the Noghrey claim, and that it therefore has no duty to defend nor indemnify Defendant in connection with the Noghrey claim.  (Id. at ¶¶ 31, 39.)

### D.    Procedural Background

On August 21, 2024, Plaintiff filed this action for declaratory relief that it has no duty to defend or indemnify Defendant for Noghrey's claim.  On October 29, 2024, Plaintiff served Defendant's registered agent for service. (ECF No. 5.) Defendant did not respond to the complaint.  On December 19, 2024, Plaintiff requested entry of default be entered against Defendant (ECF No. 12) and the Clerk of the Court entered default the same day (ECF No. 13).

On January 23, 2025, Plaintiff filed the instant motion for default judgment.  (ECF No. 15.) On January 24, 2025, Plaintiff served the notice of the March 5, 2025 hearing related to the motion on Defendant's agent for service of process, Madison Sally Eker, via mail; and mailed and emailed Defendant's counsel, Andrew S. Cantor, pursuant to Mr. Cantor's agreement to accept service on behalf of Defendant via email.  (ECF No. 18.)  Defendant did not file an opposition to the motion; appear at either the March 5, 2025 or March 12, 2025 hearings in this matter (ECF Nos. 19, 20); nor otherwise appear in this action.  On April 29, 2025, Defendant filed a supplemental brief in support of its motion for default judgment.[7]  (ECF No. 21.)

---

[7] Plaintiff attaches multiple documents to its supplemental brief.  As stated at the hearing, the Court is confined to the

1

**III.**

2

**LEGAL STANDARD**

3      "Our starting point is the general rule that default judgments are ordinarily disfavored"

4 because "[c]ases should be decided upon their merits whenever reasonably possible." NewGen,

5 LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d

6 1470, 1472 (9th Cir. 1986)).  Pursuant to Rule 55 of the Federal Rule of Civil Procedure,

7 obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party

8 against whom a judgment for affirmative relief is sought that has failed to plead or otherwise

9 defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear

10 by affidavit or otherwise. Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry

11 of default judgment. Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court

12 to enter a default judgment.

13      The decision to grant a motion for default judgment is within the discretion of the court.

14 PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo

15 Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  The Ninth Circuit has set forth the

16 following seven factors (the "Eitel factors") that the Court may consider in exercising its

17 discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

18 substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

19 action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due

20 to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure

21 favoring decisions on the merits. Eitel, 782 F.2d at 1471-72.

22      Generally, once default has been entered, "the factual allegations of the complaint, except

23 those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th

24 Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed.

25 R. Civ. P. 8(b)(6).  Additionally, "necessary facts not contained in the pleadings, and claims

26 which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am.,

27

28

four corners of Plaintiff's complaint in determining a motion for default judgment. The Court did not consider any
attachment that was not attached to Plaintiff's complaint or expressly deemed incorporated by reference herein.

1  980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).  The relief sought must not be

2  different in kind or exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

**IV.**

**DISCUSSION**

**A.    Jurisdiction and Service of Process**

This Court has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a).  Plaintiff alleges it is incorporated in Ohio with its principal place of business in Ohio, and Defendant is incorporated in California with its principal place of business in California.  (Compl. ¶¶ 5, 7-8.)

In a declaratory judgment action, when the "applicability of [an insurance company's] liability coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action."  Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) (citation omitted).  Here, Plaintiff alleges that the Noghrey claim seeks to recover more than $75,000 in damages.  (Compl. ¶ 5; see also ECF No. 21-2 (Noghrey's demand for policy limits for medical expenses in excess of $75,000).)  The amount in controversy requirement is satisfied.  The Court therefore has subject matter jurisdiction over this action.

The Court also considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992).  "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."  Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted).

Defendant is a corporation, thus Rule 4 subdivision (h) applies.  Under Rule 4(h), one way a corporation shall be served is "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]"  Fed. R. Civ. P. 4(h)(1)(A).  Under Rule 4(e)(1), an individual may be served pursuant to state law.  Fed. R. Civ. P. 4(e)(1).  California law sets forth requirements as to the manner in which service on a corporation may be effectuated.  Cal. Code Civ. Proc. §§ 416.10-415.95.  Relevant here, a corporation may be served by delivering a copy of the summons and complaint to: (1) the person designated as agent for service of process; (2) the chief executive

1  officer, a secretary, a chief financial officer, or a person authorized by the corporation to receive

2  service of process; or (3) as authorized by various provisions of California's Corporations Code.

3  Cal. Code Civ. Proc. §§ 416.10(a)-(b), (d).

4         Revolutionary Productions, Inc.'s Statement of Information filed with the California

5  Secretary of State on December 15, 2023, identifies Madison Sally Eker as its agent for service of

6  process. (ECF No. 12-1 at 6.)  On October 26, 2024, Madison Sally Eker, was personally served

7  with the summons, complaint, and related documents at the address listed on the statement of

8  information. (ECF No. 5.) The Court finds service was properly effectuated on Defendant

9  consistent with federal and California law. Fed. R. Civ. P. 4(h)(1); Cal. Code Civ. Proc. § 416.10.

10        **B.    Eitel Factors**

11        For the following reasons, the Court finds that consideration of the Eitel factors weighs in

12  favor of granting default judgment in part in favor of Plaintiff.

13        1.    Possibility of Prejudice Toward Plaintiff

14        Generally, where default has been entered against a defendant, a plaintiff has no other

15  means by which to recover against that defendant.  PepsiCo, Inc., 238 F. Supp. 2d at 1177;

16  Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).

17  Here, the Court finds Plaintiff would be prejudiced if default judgment is not granted because

18  Plaintiff would be denied a judicial determination as to whether it has a duty to indemnify and

19  defend Defendant.  See Burlington Ins. Co. v. Diamond Partners, Inc., No. 1:10-CV-00100-LJO,

20  2011 WL 284490, at *3 (E.D. Cal. Jan. 25, 2011), F&R adopted, 2011 WL 587108 (E.D. Cal.

21  Feb. 9, 2011).  Accordingly, the Court finds this factor weighs in favor of default judgment.

22        2.    Merits of Plaintiff's Claims and Sufficiency of the Complaint

23        The second and third Eitel factors, taken together, "require that a plaintiff state a claim on

24  which the [plaintiff] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175. Plaintiff seeks a

25  declaratory judgment as to the scope of coverage of the Master Policy, pursuant to the

26  Declaratory Judgment Act, 28 U.S.C. § 2201. The Court first addresses whether Plaintiff has

27  adequately stated a claim for a declaratory judgment action, then turns to the sufficiency of the

28  complaint.

1       **a.**     **Declaratory Judgment Act**

2           i.     Existence of an Actual Controversy

3       The Declaratory Judgment Act allows a federal court to "declare the rights and other legal

4 relations" of parties to a "case of actual controversy."  28 U.S.C. § 2201(a); Spokane Indian Tribe

5 v. United States, 972 F.2d 1090, 1091 (9th Cir. 1992).  Thus, the party seeking declaratory relief

6 under 28 U.S.C. § 2201(a) must allege (1) an actual controversy (2) regarding a matter within

7 federal subject matter jurisdiction.  Nautilus Ins. Co. v. Gonzalez, No. 1:20-cv-1675 NONE JLT,

8 2021 WL 3733115, at *5 (E.D. Cal. Aug. 24, 2021), F&R adopted, 2021 WL 4306260, at *1

9 (E.D. Cal. Sept. 22, 2021).

10       "[T]here is not always a bright line test for determining whether an actual controversy

11 exists under the Act."  Progressive Cas. Ins. Co. v. Dalton, No. 2:12-CV-00713-MCE, 2012 WL

12 6088313, at *4 (E.D. Cal. Dec. 6, 2012).  A declaratory relief claim "operates prospectively, and

13 not merely for the redress of past wrongs." Britt Fertilizers, Inc. v. Bayer Corp., 665 F. Supp. 2d

14 1142, 1173 (E.D. Cal. 2009) (quoting Babb v. Superior Court, 3 Cal.3d 841, 848 (1971)).

15 Declaratory relief is appropriate when there is a "substantial controversy, between parties having

16 adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory

17 judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) (finding actual

18 controversy between insurer and insured in a declaratory judgment action to determine whether

19 insurer had duty to defend). In the insurance setting, the backdrop of the instant action, an "actual

20 controversy" may exist even if defendant's liability is contingent.  San Diego Unified Port Dist. v.

21 Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 3:15-CV-1401-BEN-MDD, 2016 WL 3766364,

22 at *3 (S.D. Cal. July 6, 2016); see also Allied Prop. & Cas. Ins. Co. v. Roberts, No. 2:11-CV-

23 00740-MCE, 2011 WL 2496039, at *4 (E.D. Cal. June 21, 2011) ("That a defendant's liability

24 may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action, and

25 the Act allows a plaintiff to bring a claim in certain cases of unresolved contingencies.").

26       Plaintiff's complaint alleges that no "suit" has been filed regarding the underlying

27 Noghrey claim. (Compl. ¶ 32.)  Plaintiff also alleges, however, that "Noghrey claims that Sum of

28 Us owed Noghrey a heightened duty and standard of care because of her intoxicated state and

1    Sum of Us breached its duty by failing to ensure Noghrey's safety after they placed her in the golf

2    cart." (Compl. ¶ 24.)   At the hearing, the Court inquired as to the procedural posture of the

3    underlying Noghrey claim and the truth of Noghrey's negligence claims alleged in the complaint.

4    See Fed. R. Civ. P. 55(b)(2)(C) (the court may conduct hearings or make referrals when it needs

5    to establish the truth of any allegation by evidence).   Defendant proffered its allegations came

6    directly from a demand letter for policy limits tendered by Noghrey. The Court took the matter

7    under submission to afford Plaintiff the opportunity to file a motion to amend its complaint to

8    address various deficiencies identified by the Court or, alternatively, provide supplemental

9    briefing if Plaintiff believed the four corners of its complaint sufficiently stated a claim.

10          Plaintiff elected to file supplemental briefing to which it attached Noghrey's settlement

11   demand letter to Plaintiff, dated May 9, 2024. (ECF No. 21-2 at 2-12.) Although the letter is not

12   physically attached to the complaint, the Court finds it is incorporated by reference. Documents

13   are incorporated into the complaint by reference "in situations where the complaint necessarily

14   relies upon a document or the contents of the document are alleged in a complaint, the document's

15   authenticity is not in question and there are no disputed issues as to the document's relevance."

16   Coto Settlement, 593 F.3d at 1038.  Because the contents of Noghrey's demand letter are alleged

17   in the complaint (compare Compl. ¶¶ 20-24 with ECF No. 21-2 at 3-4), and there is no dispute

18   regarding the authenticity or relevance of the letter, the Court finds the document is incorporated

19   by reference and may be considered. See Burlington, 2011 WL 284490, at *4 (granting default

20   judgment and finding the plaintiff had sufficiently alleged a cause of action for declaratory relief

21   even though the documents referred to in the complaint and incorporated by reference were

22   provided in supplemental briefing and not actually attached to the complaint).

23          Accepting the factual allegations contained in the complaint as true, the present case

24   involves an insurer, Plaintiff, seeking a declaratory judgment that the Master Policy does not

25   provide coverage to the insured, Defendant, for the damages sustained by Noghrey on September

26   15-16, 2023.  Thus, Plaintiff requests that this Court grant default judgment against Defendant, its

27   insured, by finding an actual controversy exists based on its allegations of (1) Noghrey's

28   negligence claim made in her settlement demand letter, and (2) Defendant's contention that

13

1    Plaintiff is obligated under the terms of the Master Policy to defend and indemnify it in

2    connection with the Noghrey claim.   (Compl. ¶¶ 33-34, 40-41.)

3        The Court finds Plaintiff has pleaded that a real and substantial controversy exists between

4    parties having adverse interests. Plaintiff has alleged that it and Defendant have taken adverse

5    positions regarding Plaintiff's duty to indemnify and defend Defendant in connection to the

6    Noghrey claim under the Master Policy. (Compl. ¶¶ 34, 41.) Although the complaint does not

7    allege that the Noghrey claim has commenced in any other proceeding, Plaintiff received a

8    demand letter to resolve the matter for policy limits on behalf of its insured, Defendant, who has

9    tendered the claim to Plaintiff. The Court finds this sufficient to allege an actual controversy

10   exists.  See Progressive, 2012 WL 6088313, at *5 (finding an actual controversy existed between

11   an insurer and insured after an injured third party sent a letter to the insured requesting damages

12   for negligence and/or breach of duties because such letter could reasonably cause the insurer to

13   believe "that [it would] be subject to liability"); see also Gen. Ins. Co. of Am. v. Nunez, No. 1:21-

14   cv-00150 JLT BAM, 2022 WL 1091207, at *1 (E.D. Cal. Apr. 12, 2022), F&R adopted in part,

15   2022 WL 1241312 (E.D. Cal. Apr. 27, 2022) (granting default judgment for declaratory relief that

16   an insurer has no duty to defend nor indemnify insureds under a home owners policy for a

17   prelitigation liability claim tendered by an injured third party).  Plaintiff has sufficiently alleged

18   that an active dispute exists between Plaintiff and Defendant over Plaintiff's obligations under the

19   Master Policy involving its duties to defend and indemnify Defendant related to the Noghrey

20   claim. Accordingly, the Court finds Plaintiff has pleaded facts sufficient to state an actual

21   controversy exists under 28 U.S.C. § 2201(a).

22            ii.    Discretion to Exercise Subject Matter Jurisdiction

23        Once a court has determined whether an actual controversy exists, the court must then

24   determine whether to exercise its subject matter jurisdiction. Am. States Ins. Co. v. Kearns, 15

25   F.3d 142, 143-44 (9th Cir. 1994). "The Court has the discretion to determine whether to entertain

26   an action for declaratory relief, because the Declaratory Judgment Act 'gave the federal courts

27   competence to make a declaration of rights; it did not impose a duty to do so.' "  Nautilus, 2021

28   WL 3733115, at *5 (quoting Pub. Affs. Assocs., Inc. v. Rickover, 369 U.S. 111, 112 (1962)); 28

1    U.S.C. § 2201(a) (the court "<u>may</u> declare the rights...of any interested party") (emphasis added).

2    In deciding whether to exercise its subject matter jurisdiction, the court should (1) avoid needless

3    determination of state laws; (2) discourage litigants from filing declaratory actions as a means of

4    forum shopping; and (3) avoid duplicative litigation. <u>San Diego Unified Port Dist.</u>, 2016 WL

5    3766364, at *4 (citing <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491 (1942); <u>Principal Life Ins. Co. v.</u>

6    <u>Robinson</u>, 394 F.3d 665, 672 (9th Cir. 2005)).

7         The Court finds these factors weigh in favor of the Court exercising its subject matter

8    jurisdiction in this action. The dispute involves a determination of whether the Master Policy

9    covers the underlying Noghrey claim. Such determination merely involves an analysis of the

10   Master Policy, without infringing on novel state law issues. <u>See</u> <u>Progressive</u>, 2012 WL 6088313,

11   at *7.  There is no appearance of forum shopping or a parallel action.  Thus, entry of declaratory

12   relief is appropriate and necessary to resolve the uncertainty surrounding Plaintiff's obligations.

13   Because Plaintiff states an actual controversy and the relevant factors weigh in favor of the Court

14   exercising its jurisdiction, the Court finds it appropriate to entertain Plaintiff's claim for relief.

15        **b.     Whether the Master Policy Covers the Noghrey Claim**

16        Turning to the sufficiency of Plaintiff's complaint, Plaintiff alleges that there is no

17   coverage for the Noghrey claim under (1) the commercial general liability coverage part of the

18   Master Policy because the liquor liability and auto exclusions bar coverage; (2) the professional

19   liability coverage part of the Master Policy because the alleged damages are not because of an act,

20   error, or omission committed in the rendering of or failure to render "professional services"; and

21   (3) the professional liability coverage part of the Master Policy because the liquor liability and

22   auto exclusions preclude coverage.  (Compl. ¶¶ 27-29.)  The Court addresses each in turn.

23        i.     <u>Commercial General Liability Coverage</u>

24        The commercial general liability coverage part of the Master Policy provides that Plaintiff

25   would indemnify, or "pay those sums that the Insured[8] becomes legally obligated to pay as

26   _____

27   [8] The commercial general liability coverage part of the Master Policy provides that an "insured" also includes the
     insured's " 'volunteer workers" only while performing duties related to the conduct of [the insured's] business, or
     [the insured's] 'employees'…but only for acts within the scope of their employment…or while performing duties

28   related to the conduct of [the insured's] business." (ECF No. 1 at ¶ 10; ECF No. 1-1 at 58.)

damages because of 'bodily injury'…to which this insurance applies." (ECF No. 1-1 at 46.)  The Master Policy also provides that Plaintiff has a "duty to defend the Insured against any 'suit' seeking those damages" except Plaintiff has "no duty to defend the Insured against any 'suit' seeking damages for 'bodily injury' to which this insurance does not apply."  (Id.)  Plaintiff alleges these duties within the commercial general liability coverage to indemnify and defend are not triggered for the Noghrey claim because Noghrey's claim seeking damages for bodily injury is excluded by (1) the liquor liability exclusion, and (2) the auto exclusion.  (Compl. ¶ 27.)

       *1)*    *Liquor Liability Exclusion*

The commercial general liability coverage's amended liquor exclusion "applies only if [the insured]…serve[s] or furnish[es] alcoholic beverages for a charge whether or not such activity: (a) requires a license; (b) is for the purpose of financial gain or livelihood." (ECF No. 1-1 at 103.)  The Court finds Plaintiff has sufficiently pleaded the liquor liability exclusion applies. Plaintiff alleges Defendant "furnish[ed]" some of the alcohol Noghrey consumed.  (Compl. ¶ 25.) Attached to Plaintiff's complaint are receipts alleged to be reflecting alcohol Noghrey purchased at the Festival.  (Id.; ECF No. 1-4 at 2-5.) Plaintiff alleges that Sum of Us is identified as the retailer of the alcoholic beverages on each receipt. (Compl. ¶ 26.) Additionally, Plaintiff alleges Defendant procured, via written volunteer agreement, bartenders for the Festival on the night of the incident.  (Id. at ¶¶ 25, 26; ECF No. 1-3 at 2-13.)  Plaintiff sufficiently alleges that Defendant served and furnished alcoholic beverages for a charge. The Court thus finds the liquor liability exclusion applies.

With this, the Court finds Plaintiff has sufficiently alleged that Noghrey's negligence claim is precluded by the liquor liability exclusion. Such exclusion applies even if Noghrey's claims against Defendant "allege negligence or other wrongdoing in…providing…transportation with respect to any person that may be under the influence of alcohol" if the "occurrence" involved "bodily injury" "by reason of" "causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on [the insured's] premises, for consumption on [the insured's] premises."  (Compl. ¶ 13 (quoting ECF No. 1-1 at 103).)  Noghrey's negligence claim is premised on the contention that Defendant owed her a heightened

16

duty and standard of care "because of her intoxicated state," (Compl. ¶ 24), which was caused and contributed by Defendant furnishing and serving alcohol for a charge at its Festival. Although Noghrey's claim against Defendant alleges negligence in "failing to ensure Noghrey's safety after [Defendant's employees] placed her in the golf cart" while providing transportation, the liquor liability exclusion still applies. (Compl. ¶ 24; see also ECF No. 21-2 at 4 (demanding policy limits because "the heightened duty that was owed to Ms. Noghrey was breached because the Sum Of Us employees did not take the time to assure that Ms. Noghrey was properly secured in the cart while *transporting* her.") (Emphasis added).) Thus, Plaintiff sufficiently alleges that the liquor liability exclusion under the commercial general liability coverage part of the Master Policy bars coverage for the Noghrey claim.

2)      *The Aircraft, Auto or Watercraft exclusion*

As the Court stated at the March 12, 2025 hearing, the Court is not similarly persuaded that Plaintiff has sufficiently pleaded the applicability of the commercial general liability coverage's auto exclusion. Plaintiff alleges that Noghrey was placed in a golf cart (Compl. ¶ 24); fell from the golf cart (Compl. ¶¶ 1, 10, 23); and that the golf cart was being driven and operated by an allegedly intoxicated employee of Defendant (id. at ¶¶ 22, 23). Plaintiff otherwise fails to allege the golf cart involved in the occurrence is an "auto." The Master Policy defines "auto" as either (a) "a land motor vehicle…designed for travel on public roads…; or [(b)] any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. However, 'auto' does not include 'mobile equipment.' " (ECF No. 1-1 at 61; see also ECF No. 1-1 at 63 (providing definition of "mobile equipment").) Plaintiff makes no allegation that the subject golf cart was either designed for travel on public roads or is subject to insurance, compulsory, or financial responsibility laws in the unspecified location that it is licensed or principally garaged.

In its supplemental briefing, Plaintiff directs the Court to an unpublished[9] California appellate court decision that held a golf cart was an "auto" because the facts in that action

---

[9] The Ninth Circuit has held that courts "may consider unpublished state decisions, even though such opinions have no precedential value." Emps. Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

1    supported the finding on summary judgment that the golf cart was registered to drive on public

2    roads. (ECF No. 21 at 6 (citing <u>Quinn v. Cal Farm Ins. Co</u>, No. B169281, 2004 WL 2785609

3    (Cal. Ct. App. Dec. 6, 2004)). Here, Plaintiff provides zero well-pleaded <u>factual</u> allegations for

4    the Court to accept as true that the subject golf cart in the underlying action satisfies the definition

5    of "auto" contained within this specific auto exclusion.[10] Indeed, the court in the unpublished

6    opinion relied upon by Plaintiff acknowledged that whether a vehicle is an "auto" for purposes of

7    a policy's automobile exclusion depends upon the policy provisions and the particular facts

8    involved.  <u>Id.</u> at *4 (finding it was clear from the undisputed facts that the golf cart was designed

9    for travel on public roads because it was registered, was designed to carry multiple people, and

10   had seatbelts); <u>see also</u>  <u>Alpine Ins. Co. v. Planchon</u>, 72 Cal. App. 4th 1316, 1321 (1999)

11   ("depending upon such factors as time, place, and use, the same vehicle could satisfy common

12   understandings of both auto and mobile equipment."). The Court finds Plaintiff fails to plausibly

13   allege that the subject golf cart is an "auto" as defined within the commercial general liability

14   coverage's auto exclusion.

15        "[F]acts which are not established by the pleadings of the prevailing party, or claims

16   which are not well-pleaded, are not binding and cannot support the judgment." <u>Danning v.</u>

17   <u>Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, the Court does not recommend

18   Plaintiff's requested declaratory relief that by reason of the commercial general liability

19   coverage's auto exclusion, Plaintiff has no obligation to indemnify or defend Defendant in

20   connection with the Noghrey claim.

21        ii.    <u>Professional Services under the Professional Liability Coverage</u>

22        The professional liability coverage covering the alleged incident provides that Plaintiff

23   will indemnify "sums the Insured becomes legally obligated to pay as 'damages' because of any

24   act, error, or omission committed by an insured[11] in the rendering of or failing to render

25   ───────────────

[10] As stated at the March 12, 2025 hearing, the Court is confined to the four corners of the complaint in adjudication
26   of a motion for default judgment. Thus, Court cannot consider the additional facts about the subject golf cart
     provided by Plaintiff in its supplemental briefing.  Additionally. the email and attachment attached to counsel's
27   declaration is not incorporated by reference in the complaint. Nor is it evidence that "establish[es] the truth of any
     allegation" contained within the complaint, given Plaintiff fails to allege <u>any</u> factual allegations related to whether the
     subject golf cart is an "auto" for purposes of the auto exclusion.  <u>See</u> Fed. R. Civ. P. 55(b)(2)(C).
28   [11] The professional services coverage part of the Master policy provides that an "insured" also includes the named

1  'Professional Services'…as part of the Named Insured's operations as a social service, human

2  service, religious, educational, or cultural organization."  (ECF No. 1-1 at 83.)  Plaintiff alleges

3  that it has no duty to indemnify or defend Defendant in relation to the Noghrey claim because

4  there is no coverage under the professional liability coverage part of the Master Policy.  In

5  support, Plaintiff only reiterates the policy: Noghrey's "alleged damages are not because of an

6  act, error, or omission committed in the rendering of or failure to render "professional services."

7  (Compl. ¶ 28.)  The Court finds this conclusory allegation insufficient.

8          The professional liability insurance coverage defines "professional services" as follows:

9          **a.** "Professional Services" includes any service:

10              1.  that involves specialized education, knowledge, labor,
                    judgment, and skill, and is predominantly mental or
11                  intellectual (as opposed to physical or manual) in nature;
                    and
12
                2.  is provided as part of the Named Insured's operations as a
13                  social service, human service, religious, educational, or
                    cultural organization, and
14
                3.  is not provided by any one or more of the persons listed in
15                  d., below.

16          **b.** "Professional Services" includes the following:
                **1.** advice, guidance, or assistance;
17              **2.** counseling;
                **3.** social work:
18              **4.** therapy;
                **5.** daycare;
19              **6.** nursing or health care;
                **7.** educational instruction or teaching;
20              **8.** job training, job placement, job referral, and vocational
                    services; and
21              **9.** other services of the kind described in **a.**, above, provided as
                    part of the Named Insured's operations as a social service,
22                  human service, religious, educational, or cultural
                    organization.
23

24          **c.** "Professional Services" includes the furnishing, dispensing, or administration of
25          any prescription or non-prescription drug at the direction of a physician as part of
            the Named Insured's operation as a social service, human service, religious,
26          educational, or cultural organization.

27  _____

28  insured's employees and volunteer workers, but only while performing duties related to the conduct of the insured's
    business.  (ECF No. 1-1 at 88.)

                                        19

**d.** Subject to **c.**, above, no service performed by a member of any profession listed in **d.1.** through **d.11.**, below, constitutes a "Professional Service" within the meaning of this Coverage Part; however, this does not apply to any purely administrative or supervisory service that does not involve or require the skill or learning of such a profession, but is performed by a person who is a member o f such a profession:

    **1.** physician, physician assistant, or psychiatrist;
    **2.** accountant;
    **3.** lawyer;
    **4.** architect or engineer;
    **5.** real estate or investment manager;
    **6.** dentist or dental hygienist;
    **7.** acupuncturist;
    **8.** nurse anesthetist, nurse practitioner, or nurse midwife;
    **9.** x-ray therapist or radiologist;
    **10.** podiatrist, chiropractor, or optometrist; or
    **11.** veterinarian.

(ECF No. 1-1 at 91-92.)

Plaintiff alleges that Defendant is a corporation that "put on" a four-day, three-night festival. (Compl. ¶¶ 8, 20.)  It is entirely unclear from the complaint whether Defendant "operat[es] as a social service, human service, religious, educational, or cultural organization." (ECF No. 1-1 at 83; see Compl. ¶ 25 (alleging that "[t]he liquor license for the event was…issued to the Social Influence Foundation").)  Nor does Plaintiff provide any well-pleaded allegations that make it entirely clear the Defendant did *not* commit an act, error, or omission in the rendering of or failure to render "professional services." For example, the definition of "professional services" vaguely includes "assistance" (ECF No. 1-1 at 91-92 (Section VI.10.b.1.); see Compl. ¶¶ 21-23 (describing Defendant's employees assisting an intoxicated Noghrey back to her campsite)). The definition also includes a catch-all for "other services…provided as part of the Named Insured's operations as a social service, human service, religious, educational, or cultural organization" (ECF No. 1-1 at 91-92 (Section VI.10.b.9.)). As the Court informed Plaintiff at the hearing, the complaint as alleged fails to provide factual allegations linking the underlying claim and the alleged coverage exclusions.  On default judgment, a defendant does not admit facts that are not well-pleaded or are conclusions of law.  DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007).  Due to the dearth of factual allegations contained in the complaint, the Court

1  cannot recommend that Plaintiff has no duty to indemnify or defend Defendant in relation to the

2  Noghrey claim under the professional liability coverage part of the Master Policy.

3          iii.    Liquor and Auto Exclusions within the Professional Liability Coverage

4          Because the Court finds Plaintiff has failed to plead sufficient facts to state a claim for

5  entitlement of declaratory relief under the professional liability coverage, the Court recommends

6  denying Plaintiff's request for declaratory judgment that it has no duty to indemnify or defend

7  Defendant because coverage under the professional services liability coverage part of the Master

8  Policy is barred by the liquor liability and auto exclusions. (Compl. ¶ 33, 40.)  Even if it was

9  determined coverage did exist, the Court would recommend denying declaratory relief under the

10  auto exclusion of the professional liability coverage for the same reasons as those provided in the

11  Court's analysis of the substantially similar auto exclusion contained within the commercial

12  general liability coverage.

13          In short, based upon the factual allegations and the terms of the policy alleged in the

14  complaint, Plaintiff has demonstrated the merits of its claim for declaratory relief stating it has no

15  obligation to indemnify or defend Defendant with respect to the Noghrey claim because coverage

16  under the commercial general liability part of the Master Policy is precluded by the liquor liability

17  exclusion.  However, for the foregoing reasons, Plaintiff has failed to demonstrate the merits of

18  its claim that it has no obligation to indemnify or defend Defendant with respect to the Noghrey

19  claim under (1) the auto exclusion of the commercial liability coverage; (2) the professional

20  liability coverage part of the Master Policy generally; (3) or the liquor liability and auto

21  exclusions contained within the professional liability coverage.

22          Thus, strictly limited to the liquor liability exclusion under the commercial general

23  liability part of the Master Policy, the Court finds the second and third Eitel factors weigh in

24  favor of default judgment.  As to the remaining requests for judicial determination, the Court

25  finds these factors do not weigh in favor of default judgment.  However, because these are

26  findings and recommendations, the Court will address the remaining Eitel factors.

27          3.      The Sum of Money at Stake in the Action

28          In considering this factor, the Court "must consider the amount of money at stake in

21

1    relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F Supp. 2d at 1176; see

2    also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

3    Here, Plaintiff seeks only declaratory relief through its motion for default judgment.  (ECF No. 15

4    at 10.)   Where a plaintiff's claim is not for monetary damages, some courts in this Circuit—

5    including Courts in this district—have determined that this factor weighs in favor of granting

6    default judgment. See, e.g., Nautilus, 2021 WL 3733115, at *5.  Other Courts have concluded that

7    when the requested declaratory relief "implicates the parties and merits of a separate action, ...

8    courts have considered the amount at stake in that separate action while weighing the Eitel

9    factors."  See, e.g., Echelon Prop. & Cas. Ins. Co. v. Allstate Med Trans LLC, No. CV-19-08295-

10   PCT-DWL, 2020 WL 3192432, at *3 (D. Ariz. June 15, 2020) (quoting Stillwater Ins. Co. v.

11   Fricker, 2018 WL 2985255, *1 (D. Ariz. 2018)).  This Court is persuaded by those courts that

12   have determined that this factor only accounts for the direct pecuniary effect of this judgment, not

13   the amount potentially at stake in the underlying claim. See Mesa Underwriters Specialty Ins. Co.

14   v. Hulett, No. 2:21-CV-08284-MCS-KS, 2022 WL 17218505, at *6 (C.D. Cal. Oct. 26, 2022).

15   Accordingly, because Plaintiff's claim does not seek monetary relief, the Court finds this Eitel

16   factor weighs in favor of default judgment.

17       4.    The Possibility of a Dispute Concerning Material Facts

18       The next Eitel factor considers the possibility of a dispute concerning material facts.

19   Here, although Defendant was properly served—and affirmatively accepted service of the instant

20   motion for default judgment (ECF No. 18)—Defendant failed to appear and defend in this action.

21   Additionally, there is no possibility of dispute regarding the few material facts contained within

22   the complaint due to the factual allegations in the complaint being taken as true upon Defendant's

23   default.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177; Elektra Entm't Group Inc. v. Crawford, 226

24   F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken

25   as true after the court clerk enters default judgment, there is no likelihood that any genuine issue

26   of material fact exists.").  Further, the Master Policy and the Certificate of Coverage are set forth

27   in Plaintiff's complaint, which means there is no dispute as to the existence of such terms.

28   Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment.

5.    Whether Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that a defendant's default resulted from excusable neglect. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Service was properly effectuated on Defendant. (See ECF No. 5.) Accordingly, the Court finds this factor weighs in favor of granting default judgment because Defendant has failed to file a responsive pleading, move to set aside its default despite accepting service of the instant motion (ECF No. 18), or otherwise appear in this action.

6.    Policy Favoring a Decision on the Merits

Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, Defendant's failure to appear has made a decision on the merits impossible at this juncture. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Given the prejudice to Plaintiff if default judgment is not granted, and the merits of the allegations contained in the complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits. See PepsiCo Inc., 238 F. Supp. 2d at 1177. Accordingly, the Court finds the policy favoring decisions on the merit does not weigh against entering default judgment against Defendant under these circumstances.

In sum, the Court finds that the Eitel factors weigh in favor of granting default judgment in part. The Court now turns to the types of relief requested by Plaintiff.

**C.    Requested Relief**

The Court finds that the Eitel factors weigh in favor of granting default judgment in part as indicated herein. Accordingly, the Court turns to the relief requested by Plaintiff. Plaintiff confirms that it does not seek any monetary damages. (ECF No. 15 at 2.) Rather, Plaintiff seeks

the Court's declaration that (1) Great American Insurance Company has no duty to defend Sum of Us in connection with the underlying Noghrey claim and (2) Great American has no duty to indemnify Sum of Us for any liability it may incur or has incurred in connection with the underlying claim. (ECF No. 15; Compl. at 14.)  As stated, the Court finds the entry of default judgment is appropriate as to the commercial general liability part of the Master Policy under the liquor liability exclusion only.  Thus, the Court finds Plaintiff is entitled a portion of its requested declaratory relief.

## V.

## CONCLUSION AND RECOMMENDATIONS

The Eitel factors weigh in favor of granting default judgment in part, and the entry of default judgment is within the discretion of the Court.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Based upon the foregoing, the Court HEREBY RECOMMENDS that: Plaintiff's motion for default judgment (ECF No. 15) be GRANTED in part and DENIED in part as follows:

1.  The Court issue judgment finding and declaring that, by reason of the liquor liability exclusion to the commercial general liability coverage part of the Master Policy, Great American Insurance Company has no duty to indemnify or defend Revolutionary Productions Inc., a California corporation also known as Sum of Us Festival in connection with the underlying Noghrey claim; and

2.  Plaintiff's motion for default judgment be DENIED in all remaining requests for declaratory relief.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

1    time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th

2    Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).  **Should Plaintiff**

3    **instead elect to file a motion to amend its complaint, the Court will evaluate the motion,**

4    **and, if appropriate, vacate these findings and recommendations.**

5         IT IS FURTHER ORDERED that the Clerk of the Court is DIRECTED to randomly

6    assign this matter to a District Judge.

7         Finally, Plaintiff is HEREBY ORDERED to serve a copy of these findings and

8    recommendations on Defendant within **three (3) days** of entry of these findings and

9    recommendations.

10

11   IT IS SO ORDERED.

12   Dated:   **August 25, 2025**

                                                    STANLEY A. BOONE
13                                                  United States Magistrate Judge

25