# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>REVOLUTIONARY PRODUCTIONS INC.<br>*a/k/a Sum of Us Festival*,<br><br>Defendant. | Case No.  1:24-cv-01001-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>ORDER REQUIRING SERVICE ON DEFENDANT WITHIN THREE DAYS<br><br>(ECF No. 37)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is Plaintiff Great American Insurance Company's ("Plaintiff") motion for default judgment.  Plaintiff seeks default judgment against Defendant Revolutionary Productions Inc. ("Defendant").  No opposition to the motion was filed.  On May 13, 2026, the Court held a hearing on the motion, at which no appearance was made on behalf of Defendant. Having considered the moving papers, the declarations and exhibits attached thereto, Defendant's nonappearance, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Plaintiff's motion for default judgment.

### II.

### RELEVANT BACKGROUND

#### A.    The Underlying Prelitigation Claim

Plaintiff filed this action for declaratory judgment under 28 U.S.C. § 2201(a) to be relieved of any duty to defend or indemnify Defendant under an insurance policy for injuries sustained by third party Natalie Noghrey ("Noghrey") while attending the Sum of Us Festival

2023 (the "Festival").  (ECF No. 30 ("FAC"), ¶¶ 1-2.)  This action arises from Noghrey's complaint against Sum of Us in *Natalie Noghrey v. Revolutionary Productions, Inc. aka Sum of Us Festival, et al.*, County of San Francisco Superior Court Case No. CGC-25-629071.  (FAC ¶ 28; Ex. E.)

According to Plaintiff's complaint, Noghrey was drinking alcohol on the evening of September 15, 2023 while attending the Festival.  (Id. ¶ 20.)  The Festival furnished some of the alcohol Noghrey consumed.  (Id. at ¶ 26.)  Plaintiff provides three receipts for alcohol purchases allegedly made by Noghrey between 8:22 p.m. and 11:46 p.m., each identifying Defendant as the retailer.  (Id. at ¶ 27; Ex. D.)  Plaintiff alleges the liquor license for the event was nontransferable and issued to the Social Influence Foundation.  (FAC ¶ 26.)  The bartenders on the night of the incident entered into separate written Volunteer Agreements for the Festival with Defendant whereby they agreed to provide services in exchange for free or discounted entry into the Festival.  (Id. at ¶¶ 26, 27; Ex. C.)  Plaintiff alleges that Defendant paid the bartenders their bartending tips from the Festival.  (FAC ¶ 27.)

As the evening progressed, Festival organizers and staff determined that Noghrey was excessively intoxicated and that she needed to be taken back to her campsite.  (FAC ¶ 23.)  When Festival organizer, Nadia Eker, and employee, Iris Triska, attempted to walk Noghrey in the direction of her campsite, Eker and Triska identified a golf cart being driven by employee, Jess Weiner.  (Id.)  Weiner was transporting another attendee to the medical area.  (Id.)  Eker and Triska asked Weiner if they could ride on the golf cart to either reach the command center, the medical area, or get as close as possible to Noghrey's cabin.  (Id.)

Between approximately 1:20 a.m. and 2:00 a.m. on September 16, 2023, Weiner made a right turn and Noghrey allegedly fell out of the golf cart and hit her head on the pavement, rendering her unconscious.  (FAC ¶¶ 20, 24.)  Noghrey's claim alleges that she was rushed to the hospital where she stayed under 24-hour care for nearly a month before she was discharged.  (Id. at ¶ 24.)  Noghrey claims she has sustained permanent injuries as a result of the incident.  (Id.)

Noghrey claims that Defendant owed Noghrey a heightened duty standard of care

because of her intoxicated state.  (FAC ¶ 25.)  Noghrey further claims Defendant breached its heightened duty because Defendant's employees failed to ensure Noghrey's safety after they placed her in the golf cart.  (Id.)

### B.      Terms of the Policy

Plaintiff issued a policy number 472-50-34-01 to named insured Sports and Recreation Providers Association for the policy period February 2, 2023 to February 2, 2025 (the "Master Policy").  (FAC at ¶ 9; Ex. A ("Policy Common Declarations") at 1.)  Under the Certificate of Coverage No. GAS114226 Form 36270 (Ed. 05/18) in connection with the Master Policy (the "Certificate"), Defendant Revolutionary Productions, Inc.: Sum of Us Festival "qualifies as an insured under the Master Policy for the period of September 11, 2023 to September 19, 2023."[1] (FAC ¶ 10; Ex. B.)  The Certificate provides insurance subject to all its terms, conditions, and limitations and incorporates the Master Policy by reference.  (Id.)  The Certificate provides that "[c]overage only applies to 'Certificate Holders' [i.e., Revolutionary Productions, Inc.: Sum of Us Festival] for whom coverage has been placed in this program and by whom the premiums have been paid.  Coverage does not apply to the 'Policyholder' [i.e., Sports and Recreation Providers Association]."  (FAC, Ex. B ("Certificate of Coverage") at 3.)  Coverage by the insurance policy was limited to injury or damage caused by and occurring at the Sum of Us Festival.  (FAC, Ex. B ("Limitation of Coverage to Designated Operations or Locations") at 1.)

The Certificate affords (1) commercial general liability coverage with limits of insurance of $1,000,000 each "occurrence"[2] and in the aggregate, and (2) professional liability coverage with limits of insurance of $1,000,000 each act, error, or omission and in the aggregate.  (FAC, Ex. B ("Certificate of Coverage") at 1-2.)  Notably, the Certificate indicates "liquor liability" and "hired and non-owned autos" are "Not Covered."  (Id.)

/ / /

---

[1] Both the Master Policy and the Certificate are attached to the complaint and form the basis of Plaintiff's claims. (FAC, Exs. A, B.) The Court finds both are incorporated by reference and may be considered. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); see also Fed. R. Civ. P. 10(c).

[2] The Master Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (FAC, Ex. A ("Commercial General Liability Coverage Form") at 18.)

1.    Commercial General Liability Coverage

The Master Policy provides commercial general liability coverage pursuant to Form CG 00 01 (Ed. 04/13). (FAC ¶ 12.)  The Master Policy provides, in pertinent part, the following coverage by Plaintiff for bodily injury and property damage liability:

> **a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury"[3] or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit"[4] seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** the "bodily injury" or "property damage" occurs during the policy period…

(Id.; Ex. A ("Commercial General Liability Coverage Form") at 1.)

The Master Policy's commercial general liability coverage is subject to an "Amendment of Liquor Liability Exclusion" endorsement, Form CG 21 50 (Ed. 04 13), which provides, in pertinent part, that the insurance does not apply to:

> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> **(1)** causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

---

[3] The Master Policy defines "bodily injury" as "physical injury, sickness, or disease, including death of a person. 'Bodily injury' also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person."  (FAC, Ex. A ("Social Service Agency General Liability Broadening Endorsement") at 4.)

[4] The Master Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged…."  (FAC, Ex. A ("Commercial General Liability Coverage Form") at 19.)

4

**(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** the supervision, hiring, employment, training or monitoring of others by that Insured; or

**(b)** providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in paragraph **(1), (2)** or **(3)** above.

This exclusion applies only if you:

**(1)** manufacture, sell or distribute alcoholic beverages;

**(2)** serve or furnish alcoholic beverages for a charge whether or not such activity:

      **(a)** requires a license;

      **(b)** is for the purpose of financial gain or livelihood;

**(3)** serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

(FAC ¶ 13; Ex. A ("Amendment of Liquor Liability Exclusion") at 1.)

The Master Policy's commercial general liability coverage is also subject to an "aircraft, auto or watercraft exclusion," which provides, in part, that the insurance does not apply to:

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto"[5] or

---

[5] The Master Policy defines "auto" as either (a) "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or [b] any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally

watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This [aircraft, auto, or watercraft] exclusion does not apply to:

**(5)**    "bodily injury" or "property damage" arising out of:

**(a)** the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment."

(FAC ¶ 15; Ex. A ("Commercial General Liability Coverage Form") at 4-5.)

2.    Professional Liability Coverage

The Master Policy also provides professional liability coverage, which provides in pertinent part:

[Plaintiff] will pay those sums the Insured becomes legally obligated to pay as 'damages' because of any act, error, or omission committed by:

**(1)** an insured in the rendering of or failure to render 'Professional Services'; or

**(2)** another person or organization for whom the Named Insured is vicariously liable, in the course of that person's or organization's rendering of or failure to render 'Professional Services' for or on behalf of the Named Insured; as part of the Named Insured's operations as a social service, human service, religious, educational, or cultural organization.

[Plaintiff] will have the right and duty to defend the Insured against any 'suit' seeking those 'damages.' However, [Plaintiff] will have no duty to defend the Insured against any 'suit' seeking 'damages'

---

garaged." (FAC, Ex. A ("Commercial General Liability Coverage Form") at 16.) However, 'auto' does not include 'mobile equipment.'" (Id.; see also id. at 18 (providing definition of "mobile equipment").)

6

for any act, error, or omission to which this insurance does not apply….

(FAC ¶ 17; Ex. A ("Professional Liability Insurance") at 1.)

The Master Policy's professional liability coverage also provides, in pertinent part, that the insurance does not apply to any:

> **e.** "Damages" because of any liability by reason of:
>
> > **(1)** causing or contributing to the intoxication of any person;
> >
> > **(2)** furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
> >
> > **(3)** any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages….
>
> **p.** "Damages" because of any liability arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, "auto," or watercraft, whether or not owned or operated by, or rented or loaned to, any insured. Use includes operation and loading or unloading.
>
> This exclusion applies even if the claim or "suit" against any insured alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that Insured, if the liability arises from the ownership, maintenance, use, or entrustment to others of any aircraft, "auto," or watercraft, whether or not owned or operated by, or rented or loaned to, any insured.

(FAC ¶ 18; Ex. A ("Professional Liability Insurance") at 2, 4.)

### C. Plaintiff's Allegations

Plaintiff alleges there is no coverage for the Noghrey claim under (1) the commercial general liability coverage part of the Master Policy because both the liquor liability exclusion and auto exclusion bars coverage (FAC ¶ 45); (2) the professional liability coverage part of the Master Policy because the alleged damages are not because of an act, error, or omission committed in the rendering of or failure to render "professional services" (id. at ¶ 46); or (3) the professional liability coverage part of the Master Policy because both the liquor liability exclusion and auto exclusion preclude coverage (id. at ¶ 47). Defendant allegedly disagrees with Plaintiff's contention that there is no coverage for the Noghrey claim and contends

7

Plaintiff is obligated under the terms of the Master Policy to indemnify and defend it in connection to the Noghrey claim. (Id. at ¶¶ 51, 58.)  Accordingly, Plaintiff seeks a judicial determination that the Master Policy does not provide coverage for the Noghrey claim, and that it therefore has no duty to defend nor indemnify Defendant in connection with the Noghrey claim. (Id. at ¶¶ 49, 56.)

### D.      Procedural History

The operative complaint in this action is the First Amended Complaint filed on November 20, 2025.  (ECF No. 30.)  Defendant did not respond to the complaint.  On March 23, 2026, Plaintiff requested entry of default be entered against Defendant (ECF No. 32), and the Clerk of Court entered default the following day.  (ECF No. 34, 35.)

On March 31, 2026, Plaintiff filed a motion for default judgment.  (ECF No. 37.) Defendant did not file an opposition to the motion nor otherwise appear in this action.  The deadline to file an opposition has expired.  See L.R. 230(c).

On May 13, 2026, the Court held a hearing with the courtroom open to the public.  (ECF No. 44.)  Counsel Carys A. Arvidson appeared on behalf of Plaintiff.  No one appeared on behalf of Defendant.

## III.

## LEGAL STANDARD

"[D]efault judgments are ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process. Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a). After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

///

Entering a Default Judgment.

(2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Id.

The decision to grant a motion for default judgment is within the discretion of the court. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6).  The amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261,

9

1267 (9th Cir. 1992) (internal citation omitted).  The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

## IV.

## DISCUSSION

### A.    Jurisdiction and Service of Process

The Court previously addressed subject matter jurisdiction in its prior findings and recommendations.  (ECF No. 23.)  The Court reaffirms that it has subject matter jurisdiction because the parties are diverse and amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a).

Likewise, the Court previously found that service of the complaint was properly effectuated on Defendant consistent with federal and California law.  (ECF No. 23.)  Generally, any pleading filed after the original complaint must also be served.  Fed. R. Civ. P. 5(a)(1)(B).  However, service is not required on a party who is in default for failing to appear, unless the pleading asserts a new claim for relief.  Fed. R. Civ. P. 5(a)(2); see also L.R. 135(d).  Because the Clerk of Court previously entered default against Defendant and the First Amended Complaint does not assert any new claims for relief, service of the First Amended Complaint was not required under Federal Rule of Civil Procedure 5.[6]

### B.    Eitel Factors

For the following reasons, the Court finds that consideration of the Eitel factors weighs in favor of granting default judgment in favor of Plaintiff.

#### 1.    Possibility of Prejudice Toward Plaintiff

Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).  Here, the Court finds Plaintiff would be prejudiced if default judgment is not granted because

---

[6] The Court observes that, out of an abundance of caution, Plaintiff emailed the First Amended Complaint to Defendant's counsel, Andrew Cantor, on December 8, 2025, pursuant to counsel's agreement to accept service via email.  (ECF Nos. 38-2, 38-3.)  Plaintiff also provided counsel with notice of its intent to request entry of default and served courtesy copies of the Clerk of Court's entries of default.  (ECF Nos. 38-4, 38-5, 38-6.)  The Court notes however that such service was not required under Federal Rule of Civil Procedure 5.

Plaintiff would be denied a judicial determination as to whether it has a duty to indemnify and defend Defendant.  See Burlington Ins. Co. v. Diamond Partners, Inc., No. 1:10-CV-00100-LJO, 2011 WL 284490, at *3 (E.D. Cal. Jan. 25, 2011), F&R adopted, 2011 WL 587108 (E.D. Cal. Feb. 9, 2011).  Accordingly, the Court finds this factor weighs in favor of default judgment.

    2.  Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Plaintiff seeks a declaratory judgment as to the scope of coverage of the Master Policy, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Court first addresses whether Plaintiff has adequately stated a claim for a declaratory judgment action, then turns to the sufficiency of the complaint.

    a.  **Declaratory Judgment Act**

The Declaratory Judgment Act requires that a party seeking declaratory relief alleges (1) an actual controversy (2) regarding a matter within the federal subject matter jurisdiction.  28 U.S.C. § 2201(a).  A request for declaratory relief alleges an actual controversy when the request is "definite and concrete, touching the legal relations of parties having adverse legal interest," and when it allows for specific and conclusive relief.  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).  Once a court has determined whether an actual controversy exists, the court must then determine whether to exercise its subject matter jurisdiction.  Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143-44 (9th Cir. 1994).  In deciding whether to exercise its subject matter jurisdiction, the court should (1) avoid needless determination of state laws; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation.  Government Employees Insurance Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998); Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942).

Plaintiff's request for a judicial determination regarding its duties to defend and indemnify Defendant under the Master Policy, as it relates to the underlying Noghrey claim, is sufficiently "definite and concrete" to plead an actual controversy.  Plaintiff alleges specific facts showing a right to relief, including the relevant Master Policy provisions, Defendant's

11

adverse positions as to its tender of coverage, and the underlying claim.  The Court finds this sufficient to allege an actual controversy exists.  See Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (holding that an actual controversy existed between insurer and insured as to the duty to defend).

Additionally, the Court finds the above factors weigh in favor of it exercising subject matter jurisdiction.  The dispute involves a determination of whether the Master Policy covers the underlying Noghrey claim.  Such determination requires only an analysis of the Master Policy and does not implicate novel issues of state law, suggest forum shopping, or a result in duplicative litigation.  Accordingly, the Court finds that declaratory relief is appropriate to resolve the uncertainty surrounding Plaintiff's obligations.

**b.  Whether the Master Policy Covers the Underlying Noghrey Claim**

Turning to the sufficiency of Plaintiff's complaint, Plaintiff alleges that there is no coverage for the underlying Noghrey claim under (1) the commercial general liability coverage part of the Master Policy because the liquor liability and auto exclusions bar coverage; (2) the professional liability coverage part of the Master Policy because the alleged damages are not because of an act, error, or omission committed in the rendering of or failure to render "professional services"; and (3) the professional liability coverage part of the Master Policy because the liquor liability and auto exclusions preclude coverage.  (FAC ¶¶ 45-47.)  The Court addresses each in turn.

i.  Commercial General Liability Coverage

The commercial general liability coverage part of the Master Policy provides that Plaintiff would indemnify, or "pay those sums that the Insured[7] becomes legally obligated to pay as damages because of 'bodily injury'…to which this insurance applies."  (FAC, Ex. A ("Commercial General Liability Coverage Form") at 1.)  The Master Policy also provides that Plaintiff has a "duty to defend the Insured against any 'suit' seeking those damages" except

---

[7] An "insured" also includes the insured's "'volunteer workers' only while performing duties related to the conduct of [the insured's] business, or [the insured's] 'employees,'…[] but only for acts within the scope of their employment…or while performing duties related to the conduct of [the insured's] business."  (FAC, Ex. A ("Commercial General Liability Coverage Form") at 12.)

Plaintiff has "no duty to defend the Insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." (Id.)  Plaintiff alleges these duties within the commercial general liability coverage to indemnify and defend are not triggered for the underlying Noghrey claim because Noghrey's claim seeking damages for bodily injury is excluded by (1) the liquor liability exclusion, and (2) the auto exclusion.  (FAC ¶ 45.)

          1)     *Liquor Liability Exclusion*

The commercial general liability coverage's amended liquor exclusion bars coverage for "bodily injury" where an insured "caus[ed] or contibut[ed] to the intoxication of any person." (FAC, Ex. A ("Amendment of Liquor Liability Exclusion") at 1.)  The exclusion applies when the insured "sell[s] or distribute[s] alcoholic beverages" or "serve[s] or furnish[es] alcoholic beverages for a charge," regardless of licensing requirements or whether the activity is for financial gain.  (Id.)

The Court finds Plaintiff has sufficiently pleaded the liquor liability exclusion applies. Plaintiff alleges Defendant furnished the alcohol Noghrey consumed before her fall.  (FAC ¶ 26.)  Plaintiff attaches receipts allegedly reflecting alcohol Noghrey purchased at the Festival, on which Sum of Us is identified as the retailer of the alcoholic beverages.  (Id. at ¶ 27; Ex. D.) Plaintiff further alleges Defendant procured, through a written volunteer agreement, bartenders for the Festival on the night of the incident.  (Id. at ¶¶ 26, 27; Ex. C.)  Taken together, these allegations sufficiently plead that Defendant served and furnished alcoholic beverages for a charge and thereby caused or contributed to Noghrey's intoxication.  Accordingly, the Court finds that the liquor liability exclusion bars coverage under the commercial general liability coverage.

          2)     *The Auto Exclusion*

The commercial general liability coverage excludes "'bodily injury'. . . arising out of the use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured."  (FAC, Ex. A ("Commercial General Liability Coverage Form") at 4-5.)  Under this coverage, an "auto" means any "land motor vehicle . . . designed for travel on public roads" or "any other land vehicle that is subject to a compulsory or financial responsibility law or other

motor vehicle insurance law where it is licensed or principally garaged." (Id. at 16.)

The Court finds Plaintiff has sufficiently pleaded the auto exclusion applies. Plaintiff alleges that the golf cart from which Noghrey fell qualifies as an "auto" within the meaning of the policy.[8] (ECF No. 37, p. 20.) Specifically, Plaintiff alleges that Sum of Us rented golf carts for use at the Festival, including on paved public roadways designed for licensed motor vehicle traffic, and that the golf cart at issue was being used for transportation on those roadways at the time of the incident. (FAC ¶¶ 31, 41; Ex. E.) These allegations support that the subject golf cart in the underlying action satisfies the definition of "auto" contained within this specific auto exclusion. Accordingly, the Court finds that the auto liability exclusion bars coverage under the commercial general liability coverage.

ii.    Professional Services under the Professional Liability Coverage

The professional liability coverage provides, in relevant part, that Plaintiff will indemnify "sums the Insured becomes legally obligated to pay as 'damages' because of any act, error, or omission committed by an insured[9] in the rendering of or failing to render 'Professional Services' . . . as part of the Named Insured's operations as a social service, human service, religious, educational, or cultural organization." (FAC, Ex. A ("Professional Liability Insurance") at 1.) Professional services includes any service that involves "specialized education, knowledge, labor, judgment, and skill, and is predominantly mental or intellectual (as opposed to physical or manual) in nature; and is provided as part of the Named Insured's operations as a social service, human service, religious, educational, or cultural organization . . . ." (Id. at 9.)

Plaintiff alleges that there is no coverage for the underlying Noghrey claim under the professional liability coverage part because the alleged damages do not arise from any act, error, or omission committed in the rendering of or failure to render professional services. (FAC

---

[8] Previously, this Court found that Plaintiff failed to plausibly allege that the subject golf cart was an "auto" as defined within the commercial general liability coverage's auto exclusion. However, the Court now finds that Plaintiff's First Amended Complaint provides well-pleaded factual allegations for the Court that the golf cart satisfies the definition of "auto" within this specific auto exclusion.

[9] The professional services coverage part of the Master policy provides that an "insured" also includes the named insured's employees and volunteer workers, but only while performing duties related to the conduct of the insured's business. (FAC, Ex. A ("Professional Liability Insurance") at 6.)

14

¶ 46.)  The Court agrees.  Plaintiff alleges that Sum of Us was a "'camping event' and 'the leading wellness community for LGBTQ+ women, trans identities, and gender expansive folks." (FAC ¶¶ 21, 42.)  Plaintiff further alleges that neither the event itself nor the furnishing of alcohol or the transportation of attendees constitutes a service requiring specialized education, knowledge, judgment, and skill nor was it predominantly mental or intellectual in nature.  (Id. at ¶¶ 43, 44.)  The Court finds Plaintiff has adequately alleged that there is no coverage for the underlying Noghrey claim under the professional liability coverage part of the Master Policy.  Accordingly, the Court need not reach the applicability of the liquor liability and auto exclusions within that coverage part.

In sum, the Court finds that the second and third Eitel factors weigh in favor of default judgment.

3. The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F Supp. 2d at 1176.  Here, there is no sum of money at issue, as Plaintiff seeks only declaratory relief. (ECF No. 37, p. 25.)  Where a plaintiff's claim is not for monetary damages, some courts in this Circuit—including Courts in this district—have determined that this factor weighs in favor of granting default judgment.  See, e.g., Nautilus Ins. Co. v. Gonzalez, No. 1:20-cv-1675 NONE JLT, 2021 WL 3733115, at *5 (E.D. Cal. Aug. 24, 2021), F&R adopted, 2021 WL 4306260, at *1 (E.D. Cal. Sept. 22, 2021).  Accordingly, because Plaintiff's claim does not seek monetary relief, the Court finds this Eitel factor weighs in favor of default judgment.

4. The Possibility of a Dispute Concerning Material Facts

The fifth Eitel factor considers the possibility of a dispute concerning material facts. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages."  PepsiCo, 283 F. Supp. 2d at 1177 (quoting TeleVideo Sys. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987)).  When a plaintiff's complaint is well pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is low.  See Landstar Ranger, Inc. v. Parth Enters., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  Given that

Plaintiff's factual allegations are taken as true, that the Master Policy and the Certificate of Coverage are set forth in Plaintiff's complaint, and that Defendant has failed to appear and defend in this action, the Court is not aware of any factual disputes that would preclude the entry of default judgment. Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment.

### 5. Whether Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that a defendant's default resulted from excusable neglect. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment because Defendant has failed to file a responsive pleading or otherwise appear in this action, despite being properly served.

### 6. Policy Favoring a Decision on the Merits

Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, Defendant's failure to appear has made a decision on the merits impossible at this juncture. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Given the prejudice to Plaintiff if default judgment is not granted, and the merits of the allegations contained in the complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits. See PepsiCo Inc., 238 F. Supp. 2d at 1177. Accordingly, the Court finds the policy favoring decisions on the merit does not weigh against entering default judgment against Defendant under these circumstances.

In sum, the Court finds that the Eitel factors weigh in favor of granting default judgment. The Court now turns to the types of relief requested by Plaintiff.

**C.      Requested Relief**

Having determined that the Eitel factors favor entry of default judgment, the Court now turns to the question of remedies.  Plaintiff confirms that it does not seek any monetary damages.  (ECF No. 37, p. 6.)  Rather, Plaintiff seeks the Court's declaration that (1) Great American Insurance Company has no duty to defend Sum of Us in connection with the underlying Noghrey lawsuit and (2) that Great American has no duty to indemnify Sum of Us for any liability it may incur or has incurred in connection with the underlying claim.  (ECF No. 37; FAC ¶¶ 48-61.)  As stated above, the Court finds the entry of default judgment is appropriate as to the commercial general liability and professional liability coverage part of the Master Policy.  Therefore, the Court finds that Plaintiff is entitled to a declaratory judgment that it is under no obligation to defend or indemnify Defendant in the underlying lawsuit.

## V.

## CONCLUSION AND RECOMMENDATIONS

Based upon the foregoing, the Court HEREBY RECOMMENDS that Plaintiff's motion for default judgment (ECF No. 37) be GRANTED and that the Court issue judgment finding and declaring that:

1.      By reason of the liquor liability exclusion to the commercial general liability coverage part of the Master Policy, Great American Insurance Company has no duty to indemnify or defend Revolutionary Productions Inc., a California corporation also known as Sum of Us Festival in connection with the Underlying Lawsuit; and

2.      The Master Policy's professional liability coverage part does not provide coverage to Sum of Us for the Underlying Lawsuit because the claimant's alleged damages do not arise out of an act, error, or omission committed in the rendering of or failure to render "professional services."

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these

findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Finally, Plaintiff is HEREBY ORDERED to serve a copy of these findings and recommendations on Defendant within **three (3) days** of entry of these findings and recommendations.

IT IS SO ORDERED.

Dated:    **May 13, 2026**

STANLEY A. BOONE
United States Magistrate Judge

18